UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KRISTIE BILLIAR; MARK FIERS; R.F., a minor through her next best friend and guardian Mark Fiers; B.F., a minor through his next best friend and guardian Mark Fiers; and N.F., a minor through his next best friend and guardian Mark Fiers, | Case No. 09-CV-0133 (PJS/SER) |
| Plaintiffs, | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| ATLANTIC CREDIT & FINANCIAL, INC., a foreign corporation; and GURSTEL, STALOCH & CHARGO, P.A., | |
| Defendants. | |

Nicholas P. Slade, BARRY & SLADE, LLC, for plaintiff.

Bridget A. Sullivan and Michael D. Johnson, GURSTEL STALOCH & CHARGO, PA, and Christopher R. Morris and Michael A. Klutho, BASSFORD REMELE, P.A. for defendants.

Defendant Atlantic Credit & Finance, Inc.[1] ("Atlantic") hired defendant Gurstel, Staloch & Chargo, P.A. ("Gurstel") to collect a debt owed by plaintiff Mark Fiers. Gurstel attempted to garnish funds in five bank accounts maintained by Fiers at Hiway Federal Credit Union ("Hiway"). One of those accounts was owned solely by Fiers; each of the other four accounts was jointly owned by Fiers and either plaintiff Kristie Billiar (Fiers's girlfriend) or one of his minor children (plaintiffs R.F., B.F., and N.F.). Each of the joint accounts contained funds that

---

[1] Atlantic Credit & Finance, Inc. is incorrectly captioned as "Atlantic Credit & Financial, Inc."

had been contributed by Billiar or one of Fiers's children, none of whom is liable for Fiers's debt.

Despite the fact that Gurstel specifically told Hiway to garnish only funds contributed by Fiers himself — and despite the fact that Gurstel specifically warned Hiway that Minnesota law prohibited the garnishment of funds contributed by the other account holders — Hiway attached all of the money in the five accounts, including the funds that had been contributed by Billiar and Fiers's children.  After a series of communications between Fiers and his attorney, on the one hand, and Gurstel, on the other, Gurstel instructed Hiway to release the attached funds.

Fiers, Billiar, and Fiers's children filed this action against Atlantic and Gurstel, alleging that Gurstel's efforts to collect Fiers's debt violated the Due Process Clause of the Fourteenth Amendment and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Fiers, Billiar, and Fiers's children also allege that Atlantic and Gurstel are liable under Minnesota law for the torts of conversion, wrongful levy, and invasion of privacy.

The parties cross-move for summary judgment.  For the following reasons, the Court denies plaintiffs' motion and grants defendants' motion as to all claims save one.

I.  BACKGROUND

Atlantic hired Gurstel to collect a debt owed by Fiers.  On February 23, 2008, Gurstel obtained a default judgment against Fiers in the amount of $11,803.96.  Handschke Aff. Ex. E. After Fiers and Gurstel failed to agree on a repayment plan, Gurstel began the process of garnishing the wages that Fiers earned as an employee of the State of Minnesota.  Handschke Aff. ¶¶ 23-27.  As part of that process, Gurstel sought — and, on September 30, 2008, a state court issued — a writ of execution ordering the sheriff or any other authorized person to collect

$12,137.77 from Fiers's property.  Handschke Aff. Ex. H.  This amount included the original default judgment plus fees, costs, and post-judgment interest.  *Id.*

Gurstel garnished Fiers's wages for several months until Fiers left his job with the State of Minnesota.  Shortly thereafter, Gurstel learned that Fiers maintained a bank account at Hiway.  Handschke Aff. ¶ 36.

On December 31, 2008, Gurstel sent Hiway a notice of third-party levy, along with the writ of execution, a disclosure, and exemption notices.  *See* Handschke Aff. ¶ 37 and Ex. I.  These documents were accompanied by a cover letter in which Gurstel instructed Hiway as follows:

> Pursuant to Enright v. Lehmann, 735 N.W.2d 326 (Minn. 2007), a creditor may not garnish funds in a joint account not contributed by the debtor[.]  Therefore, please garnish funds contributed only by the judgment debtor in any and all bank accounts in the name(s) of: **Mark Fiers, 1809 Oak St, Hastings MN 55033-3541**
>
> Account Number (if known): **all accounts**

Handschke Aff. Ex. I.

Shortly after it received Gurstel's correspondence, Hiway froze all of the funds in all five of the accounts bearing Fiers's name — that is, all of the funds in Fiers's sole account, and all of the funds in the four accounts that Fiers held jointly with Billiar or one of his children.  According to Fiers, he had not contributed any of the money that was in the joint accounts; rather, all of that money belonged to Billiar or one of his children.  Hiway attached a total of $2,655.94, but only $698.18 — the amount in Fiers's sole account — belonged to Fiers.  Amended Compl. ¶¶ 13, 17, 22, 26, 30.

None of the plaintiffs received any warning that their funds would be attached.  On January 2, 2009, Fiers received a letter from Hiway informing him that it had attached all of the funds in his five accounts.  Amended Compl. ¶ 13.  Hiway enclosed an exemption notice that informed Fiers that certain types of funds in his accounts might be exempt from garnishment, but neither the exemption notice nor any other document sent to Fiers contained any information regarding the rights of third parties such as Billiar and Fiers's children.  Amended Compl. ¶ 15.

Billiar and Fiers's children did not receive *any* information from Hiway.  Amended Compl. ¶ 14.  Thus, Hiway did not inform Billiar or Fiers's children that their accounts had been frozen, and Hiway did not give Billiar or Fiers's children any information about how they might go about "unfreezing" their funds.  (Fiers apparently told Billiar and his children about the documents that he had received from Hiway, but, as noted, those documents said nothing about the rights of Billiar and the children.)

Shortly after Fiers received the information from Hiway, he called Gurstel to discuss its attachment of the funds owned by Billiar and his children.  Amended Compl. ¶ 37.  Fiers explained to a Gurstel employee named Amanda Schotsko that only the funds in his solely owned account belonged to him and that the funds in the jointly owned accounts belonged to Billiar and the children.  Amended Compl. ¶¶ 38-39.  Fiers asked that the funds in the jointly owned accounts be immediately released.  Amended Compl. ¶ 39.

The parties dispute how Gurstel responded to Fiers's request.  According to Gurstel, Schotsko asked Fiers to provide Gurstel with a completed exemption notice claiming that the funds in the jointly held accounts were exempt from garnishment.  Handschke Aff. ¶ 39.  According to Fiers, Schotsko told him that Gurstel could garnish any funds held in any account

-4-

on which he was a signatory, and that it need not return the funds. Amended Compl. ¶ 40. Fiers alleges that Gurstel refused to release any of the funds that it had wrongfully attached and instead asked Fiers to authorize Hiway to immediately release all of those funds to Gurstel. Amended Compl. ¶¶ 41-42.

Fiers retained counsel, and on January 8, 2009, Fiers's attorney contacted Gurstel and again informed Gurstel that four of the five accounts that it had attached were joint accounts that contained funds owned by non-debtors. Handschke Aff. ¶ 41. Gurstel told Fiers's attorney that Gurstel would immediately release the funds if Fiers would produce bank statements showing ownership of the funds. *Id.* Later that day, Gurstel received copies of Fiers's bank statements and, evidently satisfied that the attached funds did not belong to Fiers, Gurstel sent a release-of-garnishment form to Hiway and to Fiers's attorney. Handschke Aff. ¶ 42 and Ex. K. All of the attached funds — including both the funds belonging to Fiers and the funds belonging to Billiar and Fiers's children — were released by Hiway on the same day that Fiers's attorney contacted Gurstel, which was six days after Fiers had received notice of the garnishment from Hiway.

Fiers, Billiar, and Fiers's children sued Atlantic and Gurstel in January 2009, alleging that, in freezing the funds in the joint accounts, Gurstel had violated the FDCPA and committed the torts of conversion, wrongful levy, and invasion of privacy. Docket No. 1. Defendants first moved for summary judgment in March 2009. Docket No. 8. While that motion was pending, Judge Joan N. Ericksen of this District certified questions to the Minnesota Supreme Court in the case of *Savig v. First National Bank of Omaha*, No. 09-CV-0132 (JNE/RLE) — a case that was factually similar to this case and that involved similar claims. This Court stayed this case

pending the Minnesota Supreme Court's resolution of the questions certified by Judge Ericksen. Docket No. 24.

After the Minnesota Supreme Court answered those questions,[2] plaintiffs in this case filed an amended complaint. In addition to re-pleading FDCPA and tort claims, plaintiffs added a claim under 42 U.S.C. § 1983, alleging that defendants deprived plaintiffs of due process by garnishing the Hiway accounts pursuant to Minnesota's garnishment statute (as interpreted by *Savig*). Docket No. 35. Both parties move for summary judgment on plaintiffs' claims.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

### B. Procedural-Due-Process Claim

Billiar and the children argue that, as non-debtors who received no notice from Gurstel or Hiway of the attachment of their funds and no information about how to challenge that attachment, they were deprived of property without due process of law. They make no claim

---

[2]*Savig v. First Nat'l Bank of Omaha*, 781 N.W.2d 335 (Minn. 2010).

that Gurstel's conduct in any way failed to adhere to the requirements of Minnesota's garnishment statute. To the contrary, they seek a declaratory judgment that Minnesota's garnishment statute violates the Due Process Clause because it does not require that a non-debtor joint-account holder be given any notice of the garnishment of the account — before *or* after the funds are attached — or any information about the process by which the garnishment may be challenged.

Under the Due Process Clause, the government may not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Thus, to prevail on their procedural-due-process claim, plaintiffs must establish that a state actor deprived them of a life, liberty, or property interest protected by the Constitution without providing adequate process. *See Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000).

Billiar and the children were deprived of a property interest when Hiway attached their funds. It is immaterial that the funds were merely attached and not actually paid to Atlantic or Gurstel. By freezing the money in the joint accounts, Hiway deprived Billiar and the children of their right to use that money. Such a temporary deprivation of access to property is sufficient to support a procedural-due-process claim. *Cf. Lewis Serv. Ctr., Inc. v. Mack Fin. Corp.*, 696 F.2d 66, 68 (8th Cir. 1982) (temporary order in replevin action requiring defendant to hold the subject property "unimpaired and unencumbered" for up to two weeks to allow the court to hear and resolve the action on its merits, constituted a deprivation of property interest that was subject to due process).

A more difficult question is whether Gurstel engaged in state action when it took advantage of the remedies and followed the procedures provided by Minnesota's garnishment

statute.  And if debt collectors such as Gurstel are state actors when they garnish funds, another difficult question is what process a non-debtor joint-account holder must receive before or after funds that she contributed to the account are attached.  But the Court need not reach these difficult questions in this case, because even if Gurstel "may fairly be said to be a state actor" for purposes of the Due Process Clause, *see e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), Gurstel could not have violated the constitutional rights of Billiar or the children because it did not ask that their funds be attached.

Gurstel specifically instructed Hiway to garnish *only* funds that had been contributed by Fiers and *not* to garnish funds that had been contributed by anyone else.  Indeed, Gurstel warned Hiway that Minnesota law *prohibited* the garnishment of funds that had not been contributed by Fiers.  Handschke Aff. Ex. I.

Hiway could have complied with Gurstel's instruction in at least three ways.  First, Hiway could have reviewed the deposit records for the accounts and tried to identify the source of the funds in the accounts.  Second, Hiway could have asked plaintiffs who contributed which funds to the accounts.  And third, Hiway could have simply told Gurstel that it could not comply with Gurstel's instruction because it lacked sufficient information to distinguish between funds contributed by Fiers, on the one hand, and funds contributed by Billiar and the children, on the other.  Hiway did none of these.  Instead, Hiway froze all of the money in all of the accounts — precisely what Gurstel had instructed Hiway not to do, and precisely what Gurstel had warned Hiway was unlawful.  When plaintiffs provided Gurstel with evidence that Hiway had not complied with Gurstel's instruction, Gurstel immediately released all of the frozen funds, including those contributed by Fiers.

The Court is unaware of any authority suggesting that when a debt collector instructs a financial institution to garnish the funds of a particular debtor, and the financial institution makes a mistake and attaches the funds of someone else, the debt collector can be held liable for the financial institution's error. If, say, Gurstel had instructed Hiway to attach the funds of John E. Smith, and Hiway mistakenly attached the funds of John F. Smith, it is difficult to understand how Gurstel could be held liable to John F. Smith for Hiway's error. The facts of this case are even more favorable to Gurstel. Gurstel not only told Hiway to garnish *only* the funds of Fiers, it went further and told Hiway that it was unlawful to garnish the funds of anyone else. In the absence of any evidence that Gurstel knew or should have known that Hiway would ignore or defy its instructions,[3] Gurstel cannot be held responsible for Hiway's error. For that reason, the Court dismisses plaintiffs' § 1983 claim.

Plaintiffs also seek a declaratory judgment that Minnesota's garnishment statute, as construed by the Minnesota Supreme Court in *Savig*, violates the Due Process Clause. The Declaratory Judgment Act provides that when an "actual controversy" exists, a federal court may declare the rights or other legal relations of any interested party. 28 U.S.C. § 2201(a). But this case does not present an "actual controversy" over the constitutionality of the procedures set

---

[3]At oral argument, counsel for plaintiffs argued that, in practice, banks do not read cover letters received from debt collectors in connection with garnishment activity, that banks simply freeze all funds in all accounts that bear the name of the garnishee, and that Gurstel knows or should know that the instructions that it conveys in cover letters will be ignored by banks. But by virtue of Fed. R. Civ. P. 56(c)(2), a party opposing a summary-judgment motion may rely only on facts "that would be admissible in evidence." *See also Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 611 n.4 (8th Cir. 2007) ("only evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment"). Arguments by an attorney are not evidence, and thus there is no *evidence* before the Court that Gurstel knew or should have known that its instructions to Hiway would be ignored.

forth in Minnesota's garnishment statute. As the Court has explained, plaintiffs were not deprived of their property because a party to this case followed the Minnesota garnishment procedures; plaintiffs were deprived of their property because a *non*-party to this case ignored explicit instructions *not* to deprive plaintiffs of their property.

The issue of whether some other debt collector, at some other time, might violate the Due Process Clause by acting in some other way under the Minnesota garnishment statute is purely abstract and hypothetical. Plaintiffs' declaratory-judgment claim is thus not ripe for adjudication because it does not present "a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996) (internal quotations omitted). The Court therefore dismisses plaintiffs' declaratory-judgment claim for lack of jurisdiction.

### C.  FDCPA Claim

Plaintiffs make two distinct claims under the FDCPA.

First, plaintiffs contend that defendants violated the FDCPA by wrongfully attaching the funds of non-debtors. As the Court has explained, Gurstel did not ask Hiway to attach the funds of any non-debtor; to the contrary, Gurstel instructed Hiway *not* to attach the funds of any non-debtor. For that reason, plaintiffs' first FDCPA claim is dismissed.

Second, plaintiffs contend that Gurstel violated the FDCPA by giving false information to Fiers. Fiers alleges — but Gurstel denies — that Schotsko told Fiers that Gurstel could garnish any funds held in any account on which Fiers was a signatory, and that Gurstel need not release the money owned by Billiar and Fiers's children. Compl. ¶ 40. If Schotsko indeed said this to Fiers, then Schotsko made a false or misleading statement, *see Enright*, 735 N.W.2d 326,

and that statement violated the FDCPA, *see* 15 U.S.C. § 1692e.[4] But the parties dispute whether Schotsko in fact made the statement attributed to her by Fiers, and thus the Court cannot grant either party's motion for summary judgment on plaintiffs' second FDCPA claim.

### *D. State-Law Claims*

As noted, it is undisputed that Gurstel complied with Minnesota's garnishment statute, as that statute has been interpreted by the Minnesota Supreme Court in *Savig*. A defendant's "exercise of a statutorily given right cannot . . . form the basis for liability in a tort action." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997). Accordingly, plaintiffs' tort claims — which are premised on defendants' exercise of rights given to them by the garnishment statute — must be dismissed.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  The summary-judgment motion of plaintiffs [Docket No. 39] is DENIED; and

2.  The summary-judgment motion of defendants [Docket No. 47] is GRANTED, and all of plaintiffs' claims are DISMISSED WITH PREJUDICE AND ON THE MERITS, with the following exceptions:

---

[4]Gurstel argues that, even if Schotsko's statement was false, the statement did not violate the FDCPA because it was not "material." The Court disagrees. A false statement to Fiers about his rights — or the rights of his girlfriend and children — to challenge the garnishment of money owned by his girlfriend and children would be material.

    a.    With respect to plaintiffs' claim under the Declaratory Judgment Act, the motion is GRANTED, and that claim is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

    b.    With respect to plaintiffs' claim that defendants violated the Fair Debt Collection Practices Act by making false, deceptive, or misleading statements to Mark Fiers, the motion is DENIED, and that claim is NOT DISMISSED.

Dated:  August  4 , 2011

s/Patrick J. Schiltz  
Patrick J. Schiltz  
United States District Judge